IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JENNIFER W.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 23-cv-2195-RJD[2] |
| | ) |
| COMMISSIONER of SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

# ORDER

**DALY, Magistrate Judge:**

Plaintiff, represented by counsel, seeks judicial review of the final agency decision denying her application for Supplemental Security Income (SSI) benefits. As explained further, the agency's decision is REVERSED and this case REMANDED to the Commissioner.

## Procedural History

Plaintiff applied for SSI in April 2018, alleging an onset date of December 31, 2016. Tr. 288. The agency initially denied her application and Plaintiff appeared at a hearing in December 2019, represented by counsel. Tr. 85, 211. The ALJ found her not disabled. Tr. 51. The Appeals Counsel denied Plaintiff's request for review and Plaintiff appealed to this Court. Tr. 4, 1020. The parties agreed to remand to the agency for further consideration, and the Appeals Council issued a Remand Order. Tr. 1093-94, 1100-1103. The ALJ found Plaintiff not disabled.

---

[1] In keeping with the court's practice, Plaintiff's full name will not be used in this Order due to privacy concerns. *See* Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] Pursuant to 28 U.S.C. §636(c), this case was assigned to the undersigned for final disposition upon consent of the parties. Doc. 10.

Tr. 948.   She now appeals to this Court.

## Issues Raised by Plaintiff

Plaintiff makes the following arguments:

1. The ALJ failed to properly consider opinion evidence.

2. The ALJ did not comply with the Appeals Council's Remand Order.

3. The ALJ failed to properly evaluate subjective symptoms.

## Applicable Legal Standards

To qualify for SSI, a claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382(c)(a)(3)(A).   To determine whether the claimant is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work?   20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the plaintiff is disabled.   *Id*.   A negative answer at any step, other than at step 3, precludes a finding of disability. *Id*.   This Court's scope of review is limited to whether the ALJ made any errors of law and whether the decision is supported by substantial evidence.   *Jeske v. Saul*, 955 F.3d 584, 587 (7th Cir. 2020) (internal citations and quotations omitted).   Substantial evidence exists if "a reasonable mind could accept [the evidence] as adequate."   *Id*.

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, this Court does not act as a rubber stamp for the Commissioner. *See Stephens v. Berryhill,* 888 F.3d 323, 327 (7th Cir. 2018).

### The Decision of the ALJ

The ALJ followed the required five-step analytical framework. He determined that Plaintiff had not engaged in substantial gainful activity since March 29, 2018. Tr. 925.

The ALJ found that Plaintiff has severe impairments of "degenerative changes to the lumbar and cervical spine, status post lumbar fusion; bilateral carpal tunnel syndrome; depression, anxiety, attention deficit hyperactivity disorder (ADHD); and post-traumatic stress disorder."

The ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

> Perform light work…except: she can occasionally climb ramps and stairs and never climb ladders, ropes and scaffolds; occasionally balance, stoop, kneel, crouch and crawl; can frequently push, pull, and reach overhead using the bilateral upper extremities; can frequently handle, finger, and feel using the bilateral upper extremities; and she must avoid concentrated exposure to hazards such as moving machinery and unprotected heights. She can perform only simple, routine, and repetitive tasks, requiring only simple work related decision, with few changes in the routine work setting; and can have no more than occasional interaction with supervisors, co-workers, and the general public.

Tr. 930-31.

Based on the testimony of a vocational expert who considered Plaintiff's age, education, work experience, and RFC, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Tr. 947.

**The Evidentiary Record**

The Court reviewed and considered the entire evidentiary record in formulating this Order. The following summary of the record is tailored to Plaintiff's arguments.

**1.     Evidentiary Hearing on December 8, 2022**

Plaintiff testified that in 2013 or 2014, she underwent lumbar spine fusion surgery.  Tr. 973.  Following the surgery, she was "continuously in pain," primarily in her lower back.  Tr. 974.  She returned to the neurosurgeon who told her that "the surgery didn't take" and she was "going to have to take some medications to find relief" because her blood pressure was high.  Tr. 974.  At the time of the hearing, Plaintiff was taking hydrocodone/acetaminophen; she also occasionally took muscle relaxers.  Tr. 975.  The medications make her tired and dizzy, although she was not "surprised" to hear that her medical records reflected that she reported no side effects.  Tr. 975-76.  She told her doctors that she was "fine" because she would otherwise be "frustrated and overwhelmed with all the medicine changes and the side effects."  Tr. 976.  Lifting anything too heavy, bending over, or reaching too far makes her back pain "unbearable."  Tr. 981.

Approximately two years before the hearing, Plaintiff started having neck and arm pain.  Plaintiff received an epidural steroid injection in August 2021 for the pain in her neck and arms, which provided some relief.  Tr. 977.  On most days, she cannot turn her neck to the left, but she can turn a little to the right.  Tr. 985-86.  Related to her carpal tunnel syndrome, Plaintiff cannot button buttons or tie shoelaces approximately 75% of the time.  Tr. 978.  Her physician has not suggested carpal tunnel release surgery.  Tr. 978.

Because of her depression and anxiety, it is difficult for Plaintiff to get out of bed and

practice hygiene or participate in activities of daily living. Tr. 978. One-two days a week, she can cook or clean or shop. Tr. 980. Her depression has gotten worse since 2016. Tr. 978-79. She has panic attacks a "few times" a week" that last approximately 10 minutes. Tr. 988. Her memory "is terrible" and she cannot focus to complete tasks. Tr. 988.

Plaintiff has difficulty sleeping because of her anxiety. Tr. 983. She also has muscle spasms in her leg and back at night. Tr. 983. She spends most of every day reclining because of the pain. Tr. 984. She can sit for approximately 30 minutes at a time. Tr. 984. She can be "up and moving around" for 10-30 minutes at a time. Tr. 984.

The ALJ presented the following hypothetical to the vocational expert, Amberley Christensen:

> ….a younger individual who has completed 12 grades of education, who has no past relevant work experience…[this] hypothetical individual retains the ability to do light work. But can only occasionally climb ramps and stairs and never climb ladders, ropes, and scaffolds, can occasionally balance, stoop, kneel, crouch, and crawl…can frequently push and pull and reach overhead using the bilateral upper extremities….can frequently handle and finger and feel using the bilateral upper extremities and must avoid concentrated exposure to hazards such as moving machinery and unprotected heights….can perform only simply routine and repetitive tasks requiring only simple work-related decisions with few changes in the routine work setting and no more than occasional interaction with supervisors, coworkers, and the general public.

Tr. 989-991. The expert testified that there are jobs that exist in the national economy for this individual. However, if the individual would be absent from work approximately three times a month on a regular basis, that would eliminate the available jobs. Tr. 991. Also, if she was off task at least 20% of the workday, that would eliminate the available jobs. Tr. 992. If the individual could only use her hands for 50% of the workday, that would eliminate the available jobs. Tr. 992. Available jobs would also be eliminated if the individual could only lift ten

pounds, or if she could only concentrate for one hour at a time.   Tr. 994.

### 2. Relevant Medical Records

Plaintiff underwent magnetic resonance imaging of her lumbar spine on January 19, 2016. Tr. 460.   The images were consistent with her decompression surgery at L3-L5, mild adjacent level disease at L2-3 "contributing to mild spinal canal and bilateral foraminal stenosis, grade 1 anterolisthesis at L4-5, and a "lumbosacral transitional segment."  Tr. 462.   Progress notes in 2018 from Plaintiff's physicians reflect a diagnosis of "chronic midline low back pain."  Tr. 477, 588, 737.   In October 2018, Plaintiff saw a neurosurgeon who made the following notes:

> [her previous surgeon] performed an L3-5 posterior decompression and fusion with improvement in her leg pain, but not back pain. He continued to follow her, eventually giving her the news that she did not heal and suggested that she may need more surgery; however, she would have to stop smoking first.   Unfortunately, her back pain was chronic and worsening and she began to have radicular pain on the right…this back pain is very low above the sacrum…..she has pain with passive movement of the shoulder and pain to palpation of the shoulder…I do believe she is strong, however. She is intact to light touch throughout, has a normal gait, normal tandem gait.
>
> I am suspicious for pseudoarthrosis, adjacent segment disease and some element of sagittal deformity with recurrent right leg radiculopathy. I strongly suggest that she discontinue smoking and she will try on her own…we will refer…for combined surgery.

Tr. 783.

Nurse Practitioner Tammie Blevins started treating Plaintiff in January 2019.   Tr. 1545. She noted that Plaintiff complained of "chronic low back pain for over five years" and neither fusion surgery nor therapy nor injections nor spinal cord stimulation had helped.   Tr. 1545.   Two neurosurgeons had recommended further surgery, but Plaintiff was "scared to have another surgery.  Tr. 1545.   On exam, Nurse Practitioner Blevins noted that Plaintiff had tenderness on both sides of the lumbar spine.   Tr. 1547.   Her gait and stance were normal.   Tr. 1548.   Nurse

Practitioner Blevins prescribed Hydrocodone and Lyrica to Plaintiff. Tr. 1551. When Plaintiff returned to see Nurse Practitioner Blevins one month later, she reported that the Lyrica and Hydrocodone allowed "her to perform essential tasks at home, but activity is still pretty limited due to pain." Tr. 1554. Plaintiff remained at the same Hydrocodone dose for the next two years. Tr. 1366.

Records from Nurse Practitioner Blevins indicate that Plaintiff began experiencing neck pain starting in 2019. Tr. 1382. She underwent therapy with "minimal benefit. Tr. 1386. CT and MRI scans in 2020 revealed mild to moderate cervical disc disease. Tr. 1324, 1325. She received steroid injections in 2020 and 2021 for neck pain. 1340, 1345, 1357. 1366.

Nurse Practitioner Blevins completed a Medical Source Statement in November 2019, stating that Plaintiff's symptoms were severe enough to interfere with more than 20% of her workday and that Plaintiff could only stand for 15 minutes at a time. Tr. 766. Nurse Practitioner Blevins further stated that Plaintiff would likely be absent from work more than three days a month due to her impairments. Tr. 767.

Throughout 2019 and 2020, Nurse Practitioner Blevins noted that Plaintiff needed additional back surgery but she had not stopped smoking (which was required prior to surgery) and she also was scared to have another surgery; Lyrica and Hydrocodone allowed her to be more active. Tr. 1386, 1554, 1564, 1569, 1576. Plaintiff received cognitive behavioral therapy for a few months but treatment stopped because of difficulty finding a provider. Tr. 1559.

In April 2020, Nurse Practitioner Blevins noted tenderness at the cervical and lumbar spine. Tr. 1578. In 2021, Plaintiff reported bilateral arm pain with tingling and numbness. Tr. 1404, 1423. A nerve conduction study reflected carpal tunnel syndrome in both hands. Tr. 1404.

Plaintiff continued to see Nurse Practitioner Blevins regularly in 2021 and 2022. From April 2021-December 2022, Nurse Blevins frequently noted that Plaintiff's gait was "not antalgic" and she had "no steppage gait" and "no motor weakness," but she also noted positive findings in musculoskeletal tests (straight leg raise, facet loading, Fabre maneuver, Gaenslen). Tr. 1738, 1745, 1751, 1755, 1769, 1776, 1782, 1789, 1795, 1800, 1810.

In 2021, Plaintiff reported increased low back pain. Tr. 1798, 1803, 1808. Hydrocodone provided "mild/modest" benefits. Tr. 1803. An epidural steroid injection in the lumbar spine in July 2021 helped alleviate her pain; a repeat injection was less helpful. Tr. 1793, 1798. Standing increased her pain. Tr. 1787. In January 2022, Nurse Practitioner Blevins listed various therapies and medications Plaintiff had tried over the past three years. Tr. 1786. Short-acting hydrocodone seemed to be the most helpful treatment. Tr. 1786. However, Plaintiff did not feel that the hydrocodone and Lyrica were providing "consistent pain coverage..any longer." Tr. 1773.

Plaintiff received an epidural steroid injection for pain in her cervical spine on August 18, 2022. Tr. 1742. One month later, Plaintiff reported to Nurse Practitioner Blevins that pain in her neck was traveling to her right hand, "causing her to drop things often." Tr. 1742, 1748. However, she had no motor weakness during the exam. Tr. 1745. Nurse Practitioner Blevins noted that Plaintiff had tenderness and decreased range of motion at her cervical and lumbar spine- but no gait abnormalities-in May, August, and September 2022. Tr. 1745, 1751, 1758. She further noted that Plaintiff had tried therapy for her lumbar and cervical spine "with increased pain each time. I do not recommend further therapy." Tr. 1742.

In December 2022, Nurse Practitioner Blevins saw Plaintiff and made the following notes:

> [Patient] suffers from chronic neck and low back pain. Radicular arm pain is still doing well following cervical epidural in August. She has not responded to low back treatment and is not interested in repeat surgery. She continues with home exercises. She continues Lyrica, Celebrex, and hydrocodone with benefit. She has failed long acting medication.
>
> All relevant imaging available was personally reviewed with the patient today with the following tests and results noted:
>
> MRI C spine 6/30/20: moderate disc bulging…at C5-6….moderate bilateral foraminal stenosis….moderate left neural foraminal stenosis at C6-7.. secondary to …a small disc bulge.
>
> MRI L spine 11/2/18: postoperative changes from..fusion of L4-S1…..degenerative changes L3-4 resulting in moderate to severe spinal canal and moderate bilateral neural foraminal stenosis.
>
> MRI L spine 5/18/21: status post L4-S1 fusion….No evidence of recurrent disc herniation or significant scar formation seen. Unchanged grade 1 L5-S1 spondylosithesis. Severe disc dessication with broad based circumferential disc bulge at L3-4. This results in moderate to severe central canal stenosis as well as moderate left and mild right neural foraminal narrowing.
>
> Will continue chronic opioid therapy. Reports improvement in pain. Patient is able to maintain function levels with use of medication management.

Tr. 1736-1740. Nurse Practitioner Blevins conducted a physical exam and noted that Plaintiff had tenderness on the lumbar, sacral, and cervical spine; she also had decreased range of motion in her lumbar and cervical spine. Tr. 1738-39. She had "no motor weakness" and no gait abnormalities. Tr. 1739.

Regarding Plaintiff's mental health, Plaintiff's primary care physician noted that her diagnosis of major depressive disorder was in "full remission" in 2017 and 2018. Tr. 412, 420, 422, 477, 588, 737. Plaintiff's treating psychiatrist, Dr. Jefrrey Vander Kooi, saw Plaintiff regularly from 2014-2019. In his notes, he consistently wrote "remission of symptoms" under "goals/treatment plan." Tr. 396, 397, 565, 566, 567 845, 846, 849, 850, 851, 1471, 1474-76, 1478,

1480, 1611, 1612, 1730, 1731.

From 2017-2022, Dr. Vander Kooi consistently noted that Plaintiff's ADHD symptoms were "much better" with Adderall. *Id.* Her mood fluctuated; the notes indicate that her mood fluctuations were related to her back and neck pain, sometimes related to issues with her husband and/or the SSI proceedings; she "tries to stay hopeful." *Id.* According to Dr. Van Der Kooi's notes, Plaintiff frequently reported that she slept well. Tr. 396, 397, 566, 567 845, 849, 851, 1471, 1474-76, 1478, 1480, 1611, 1612, 1730, 1731. On November 7, 2019, Dr. Vander Kooi completed a Medical Source Statement, opining that Plaintiff's symptoms of depression, anxiety, poor energy, and inability to concentrate would cause her to be absent from work three or more days a month.

### 3. Consultative exam

In December 2018, Dr. Frank Mikell with Disability Determination Services reviewed Plaintiff's medical records and found that she could "occasionally climb ladders, ropes, and scaffolds" and that she could occasionally "stoop, crouch, and crawl, but could frequently kneel" and should avoid "concentrated exposure to hazards." Tr. 181-82. In February 2019, Dr. Calixto Aquino (also of Disability Determination Services) made nearly identical findings, although he found that Plaintiff was unlimited in her ability to climb ramps and stairs. Tr. 201.

In June 2021, Dr. Range Reddy with Disability Determination Services found that Plaintiff could stand and/or walk for "about six hours in an eight hour work day" and could frequently "climb ladders/ropes/scaffolds." Tr. 1067-68. Dr. Reddy further found that Plaintiff was limited in her ability to reach overhead, but had unlimited capabilities for handling, fingering, and feeling. Tr. 1068. A second review by Dr. James Lafata in September 2021 affirmed these findings. Tr.

1087.

### 4. Consultative psychologists

Stephen G. Vincent performed a psychological evaluation on August 30, 2018. Tr. 573. His diagnostic impressions were (1) bipolar disorder, mixed, currently depressed, moderate to moderately severe; (2) generalized anxiety disorder; (3) posttraumatic stress disorder; (4) somatic symptom disorder with predominant pain secondary to multiple medical etiologies. Tr. 576.

Fred Klug performed a psychological consultation on May 18, 2021. Tr. 1486. He noted that Plaintiff's predominant mood was dysphoric and sad, her attentional span was adequate, concentration was good, immediate memory was impaired, and short-term memory was "poor with retrieval deficits." Tr. 1489. His diagnostic impressions were (1) somatic symptom disorder-pain; (2) tobacco use disorder-severe; (3) PTSD; (4) generalized anxiety disorder; (5) persistent depressive disorder. Tr. 1489.

## Analysis

Plaintiff argues that there are three bases for the Court to remand this case: 1) the ALJ failed to properly consider opinion evidence; 2) the ALJ did not comply with the Appeals Council's Remand Order; and 3) the ALJ failed to properly evaluate subjective symptoms.

**Opinion Evidence**

The ALJ's decision should not "give any specific evidentiary weight, including controlling weight, to any medical opinions or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §416.920c(a). When evaluating medical opinions or prior administrative medical findings, the ALJ most importantly considers:

> **Supportability.** The more relevant the objective medical evidence and supporting explanations presented by a medical source are to

> support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> **Consistency.** The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

*Id*. at §416.920c(b)-(c).

In 2018, Dr. Mikell and Dr. Aquino found that Plaintiff could perform light work; the ALJ credited these findings as mostly persuasive, noting that they were consistent with Plaintiff's medical records that showed "fairly normal strength and gait, without the need for an assistive device." Tr. 941. Plaintiff faults the ALJ for crediting these findings as mostly persuasive because they were made four years prior to the instant proceeding and claims. However, the ALJ conceded that medical records of treatment subsequent to the review by Dr. Mikell and Dr. Aquino showed evidence of additional problems, including carpal tunnel syndrome and cervical disc disease. Tr. 941. The ALJ found that their opinions were mostly persuasive with medical records available *at the time* of their reviews. Tr. 941.

As for Dr. Reddy and Dr. Lafata, the ALJ credited their findings as "partially persuasive." Plaintiff contends that the ALJ "failed to explain how the supportability and consistency factors were considered" regarding Dr. Reddy's and Dr. Lafata's findings. This argument is contradicted by the ALJ's order, noting that their finding regarding Plaintiff's ability to perform light work was supported by numerous medical records that reflected no "significant motor deficits and no gait abnormalities." Tr. 942.

Plaintiff argues that the ALJ improperly credited Nurse Practitioner Blevins' "opinion

identifying significant limitation" as "not persuasive." The ALJ concluded that "treatment records from [Nurse Practitioner] Blevins…do not support the limiting effect of [Plaintiff's] chronic pain." Tr. 945. In reaching this conclusion, the ALJ points to records reflecting that Plaintiff had no motor or gait abnormalities, as well as the "relative efficacy" of Plaintiff's hydrocodone prescription. Tr. 941. The records cited by the ALJ reflect that Plaintiff returned to short acting hydrocodone because multiple modalities and other medications were less effective than the short acting hydrocodone. Nurse Practitioner Blevins frequently noted that Plaintiff had improvement and could "maintain function levels" with the short acting hydrocodone, but apart from her "Medical Source Statement" in 2019, Nurse Practitioner Blevins never articulated what she meant by Plaintiff's function levels. In the "Medical Source Statement", Nurse Practitioner Blevins does not explain the link between medical evidence and the noted work restrictions. The ALJ therefore properly considered the lack of "internal supportability" for Nurse Practitioner Blevins' opinions in finding that they were not persuasive. *Bakke v. Kijakazi*, 62 F. 4th 1061, 1068-69 (7th Cir. 2023).

The ALJ was not persuaded by Dr. Vander Kooi's opinions, including that Plaintiff would miss three days of work a month due to symptoms of anxiety, depression, poor attention, and inability to concentrate. Tr. 943-44. The ALJ explained that "this opinion was not persuasive as it was neither well supported, nor consistent with the objective medical evidence." The opinion was given via "check box type of form, with little in the way of explanation for the basis of the limitations", therefore the ALJ appropriately noted that it was lacking the requisite internal supportability. Tr. 944; *Bakke.*

As for consistency with the objective medical evidence, the ALJ stated that "Dr. Vander

Kooi had consistently noted that the claimant's symptoms were in remission." Tr. 944. As Plaintiff notes, Dr. Vander Kooi's records appear to consistently state that remission of symptoms was a treatment goal, not that Plaintiff's symptoms were consistently in remission. Regardless, this error is not a legal one requiring reversal and other substantial evidence supports the ALJ's finding that Dr. Vander Kooi's opinions were not persuasive. The ALJ pointed to numerous records by Dr. Vander Kooi over a five-year period in which he repeatedly noted that while her moods were variable, she was nonetheless sleeping well and her ADHD was much better with medication. No mention is made in his records regarding any anxiety attacks as described by Plaintiff at the evidentiary hearing. The ALJ also cited records from Plaintiff's primary care physician in 2018 that stated her major depressive disorder was in remission. The records cited by the ALJ are therefore sufficient for a reasonable mind to accept as adequate. Even if the undersigned would have reached a different decision, this Court will not "substitute its judgment for that of the SSA." *Stephens*, 888 F.3d at 327.

**Compliance with the Appeals Council's Remand Order**

Plaintiff contends that the ALJ failed to "follow directives from the Appeals Council" regarding the "discussion of the actual medical evidence in the file" as it relates to the RFC. Doc. 21, p. 12-13. Regardless of what the Appeals Council faulted in the previous Order, an ALJ's decision "need not discuss every piece of evidence in the record" but cannot "ignore an entire line of evidence that is contrary to the ruling." *Reinaas v. Saul*, 953 F.3d 461, 466 (7th Cir. 2020) (internal quotations and citations omitted). The ALJ relied heavily on Nurse Practitioner Blevins' notes from April 2021-December 2022 that state "no motor weakness" and "not antalgic. No steppage gait." Tr. 925, 928, 936, 937, 942, 945, 946. The ALJ cited these records for a

phrase used repeatedly throughout the decision, that Plaintiff's 2021-2022 exams showed "fairly normal motor strength, sensation, and gait." *Id*.

However, within the records of those same exams (and in most instances, on the very same pages), Nurse Practitioner Blevins noted positive findings on multiple musculoskeletal tests. Tr. 1738, 1745, 1751, 1755, 1769, 1776, 1782, 1789, 1795, 1800, 1810. The ALJ never addresses these findings. The ALJ's pervasive reliance on exam findings that support his RFC-while failing to address "an entire line of evidence" from those same exams reflecting abnormalities-requires remand. *Reinaas*, 953 F.3d at 467.

**Evaluation of Subjective Symptoms**

Plaintiff makes no arguments specific to her case in support of her contention that the ALJ failed to properly evaluate her subjective symptoms. She merely discusses general case law and Social Security regulations regarding a claimant's credibility. The Court notes that overall, the ALJ considered Plaintiff's subjective statements and compared them to the medical records, explaining why he found her limitations to be less severe than she reported. Tr. 93-41. Whether the undersigned would have weighed the evidence differently is not a basis for remand. *Burmester*, 920 F.3d at 510.

**Conclusion**

After careful review of the record as a whole, the Commissioner's final decision denying Plaintiff's application for SSI is REVERSED and REMANDED to the Commissioner for further proceedings consistent with this Order.

The Clerk of Court is directed to enter judgment in favor of Plaintiff.

**IT IS SO ORDERED.**

**DATED: September 30, 2024**

                                            *s/*  *Reona J. Daly*
                                            **Hon. Reona J. Daly**
                                            **United States Magistrate Judge**